■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALFONZO QUINNEY, Appellant. [760 NYS2d 786] —Appeal from a judgment of Erie County Court (Drury, J.), entered February 7, 2001, convicting defendant after a jury trial of, inter alia, attempted assault in the first degree.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him following a jury trial of attempted assault in the first degree (Penal Law §§ 110.00, 120.10 [1]) and four counts of reckless endangerment in the first degree (§ 120.25). The charges stem from allegations that defendant, while standing at a street corner, shot a gun at a passing vehicle containing the driver of the vehicle and two passengers. An embedded bullet was recovered from the internal door frame of the vehicle, and bullet holes were found in a nearby residence. Several weeks later, the driver of the vehicle observed defendant standing on the same street corner and reported his observation to the police. The police drove to the scene and arrested defendant. At trial all three occupants of the vehicle identified defendant as the shooter, and a nearby resident testified that, upon hearing the shots, she looked out her window and observed defendant running from the scene. The defense challenged the identification testimony of the witnesses and introduced evidence that a third party was the shooter.

Contrary to defendant's contentions, the identification evidence is legally sufficient to support the conviction and the verdict is not against the weight of the evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987]). The fact that two of the occupants of the vehicle did not identify defendant during their grand jury testimony does not render their trial testimony incredible as a matter of law. The prosecutor who presented

the case to the grand jury testified for the People at trial that, for "legal" reasons, neither witness was asked to make an identification of the shooter. Contrary to defendant's further contention, the prosecutor's testimony did not constitute impermissible bolstering. In cross-examining those two occupants of the vehicle, defense counsel attempted to create the inference that their identifications were recent fabrications (*see People v Davis*, 44 NY2d 269, 277 [1978]), thereby opening the door to the People to present testimony "explain[ing] why the information was not disclosed earlier" (*People v Melendez*, 55 NY2d 445, 451 [1982]; *cf. People v Caserta*, 19 NY2d 18, 24-27 [1966]).

Contrary to defendant's contention, the prosecutor did not engage in misconduct by cross-examining defendant's brother with respect to his failure to come forward with exculpatory information before trial. Although "a citizen ordinarily has no legal obligation to volunteer exculpatory information to law enforcement authorities[,] * * * the failure to speak up at a time when it would be natural to do so might well cast doubt upon the veracity of the witness'[s] exculpatory statements at trial" (*People v Dawson*, 50 NY2d 311, 317-318 [1980]). In order to lay a foundation for such questioning, the prosecutor had to establish that the witness "was aware of the nature of the charges pending against the defendant, had reason to recognize that he possessed exculpatory information, had a reasonable motive for acting to exonerate the defendant and, finally, was familiar with the means to make such information available to law enforcement authorities" (*id.* at 321 n 4). Here, the prosecutor laid the requisite foundation and thus properly questioned the witness concerning his failure to disclose the information both during a police interview and when defendant called him as a witness before the grand jury. The prosecutor also did not engage in misconduct by referring to defendant's custodial status while cross-examining defendant's brother. "The *Dawson* principle was applicable to this case because a close relative['s] * * * knowledge that defendant is incarcerated pending trial may be reasonably found to be inconsistent with the witness'[s] failure to come forward with exculpatory evidence which might result in the accused's being freed" (*People v Jenkins*, 88 NY2d 948, 950 [1996]).

We further conclude that, although the prosecutor erred in referring to the youthful offender adjudication of a witness (*see generally People v Gray*, 84 NY2d 709, 712 [1995]), the prosecutor did not thereby cause " 'such substantial prejudice to the defendant that he has been denied due process of law' " (*People*

*v Rubin*, 101 AD2d 71, 77 [1984], *lv denied* 63 NY2d 711 [1984], quoting *People v Mott*, 94 AD2d 415, 419 [1983]). Defendant failed to preserve for our review his further contention that the prosecutor engaged in misconduct by cross-examining another witness concerning prior charges against him (*see* CPL 470.05 [2]). In ány event, that contention lacks merit. Here, the prosecutor established that the witness was not acquitted of those charges and that, instead, the charges were dismissed because the witness had provided the police with information. Thus, there was no "dismissal * * * on the merits" and the questioning was permissible (*People v Gant*, 291 AD2d 912, 913 [2002], *lv denied* 98 NY2d 675 [2002]; *see People v Stabell*, 270 AD2d 894 [2000], *lv denied* 95 NY2d 804 [2000]). Many of defendant's remaining claims of prosecutorial misconduct are unpreserved for our review and, in any event, all of those remaining claims are lacking in merit.

Defendant withdrew his request for a *Wade* hearing upon conceding that there was no police-arranged identification procedure and thus waived his present contention that he was entitled to a *Wade* hearing (*see e.g. People v Maynard*, 294 AD2d 866 [2002], *lv denied* 98 NY2d 694, 699 [2002]). In any event, that contention lacks merit. Regardless of discrepancies between the People's bill of particulars and the police report and trial testimony concerning the time of defendant's arrest, there is no evidence in the record before us that there was a police-arranged identification procedure (*see People v Dixon*, 85 NY2d 218, 222 [1995]; *see generally United States v Wade*, 388 US 218 [1967]). The identification of defendant on a public street by one of the victims was not the result of a police-arranged identification procedure (*see People v Whisby*, 48 NY2d 834, 836 [1979]), and that victim's subsequent act of pointing defendant out to the police was merely a confirmatory identification (*see People v Martindale*, 202 AD2d 158, 159 [1994], *lv denied* 83 NY2d 912 [1994]; *see also People v Rosa*, 294 AD2d 159, 159-160 [2002], *lv denied* 98 NY2d 732 [2002]).

Defendant failed to preserve for our review his contention that he was prejudiced by County Court's jury instruction concerning the fact that a defense witness had selectively invoked his Fifth Amendment privilege against self-incrimination (*see* CPL 470.05 [2]; *People v Hall*, 236 AD2d 789, 790 [1997], *lv denied* 89 NY2d 1093 [1997]), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see* 470.15 [6] [a]). Viewing the evidence, the law and the circumstances of this case, in totality and as of the time of the representation, we conclude

that defendant received meaningful representation (*see People v Baldi*, 54 NY2d 137, 147 [1981]). The sentence is neither unduly harsh nor severe. We have reviewed defendant's remaining contentions and conclude that they are without merit. Present—Pine, J.P., Hurlbutt, Kehoe, Gorski and Hayes, JJ.